**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

WEN HO LEE,                                     :

                        Plaintiff,              :

- against -                                     :
                                                          No. 1:99 CV 3380 (TPJ)
UNITED STATES DEPARTMENT OF                     :
JUSTICE, FEDERAL BUREAU OF
INVESTIGATION, and UNITED STATES                :
DEPARTMENT OF ENERGY,
                                                :
                        Defendants.
                                                :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## NON-PARTY REPORTERS' MEMORANDUM OF POINTS AND AUTHORITIES REGARDING PENALTIES TO BE IMPOSED SHOULD THE COURT FIND THE REPORTERS IN CIVIL CONTEMPT

CAHILL GORDON & REINDEL LLP
Donald J. Mulvihill (DC Bar No. 056242)
Floyd Abrams
Joel Kurtzberg
Karen Kaiser
1990 K Street, N.W.
Washington, D.C.  20006-1103
Attorneys for Non-Party Reporters Jeff Gerth and
James Risen

LEVINE SULLIVAN KOCH & SCHULZ L.L.P.
Lee Levine (DC Bar No. 343095)
David A. Schulz (DC Bar No. 459197)
Nathan E. Siegel (DC Bar No. 446253)
Chad R. Bowman (DC Bar No. 484150)
1050 Seventeenth Street, N.W., Suite 800
Washington, D.C.  20036
Attorneys for Non-Party Reporters H. Josef
Hebert and Bob Drogin

HOLLAND & KNIGHT LLP
Charles D. Tobin (DC Bar No.455593 )
Jennifer M. Mason (DC Bar No. 478632)
Ethan Arenson (DC Bar No. 473296)
2099 Pennsylvania Ave., N.W.
Suite 100
Washington, D.C.  20006
Attorneys for Non-Party Reporter Pierre
Thomas

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

ARGUMENT ...................................................................................................................... 2

    I.    ANY CONTEMPT FINE SHOULD BE NOMINAL ........................................ 2

    II.   ANY CONTEMPT FINE SHOULD BE PAYABLE TO THE
        COURT, NOT DR. LEE .................................................................................. 3

    III.   ANY CONTEMPT FINE SHOULD BE STAYED PENDING
        APPEAL ......................................................................................................... 10

CONCLUSION ................................................................................................................... 14

# TABLE OF AUTHORITIES

*Page*

*Cases*

*A.J. McNulty & Co.,* v. *Secretary of Labor*, 283 F.3d 328 (D.C. Cir. 2002)………………………………………………………..   5n

*Alexander* v. *FBI*, 193 F.R.D. 1 (D.C. Cir. 2000)……………………….   8

*American Cetacean Society* v. *Baldridge*, 604 F. Supp. 1411 (D.D.C. 1985)………………………………………………………..   12

*Bartnicki* v. *Vopper*, 532 U.S. 514 (2001)……………………………...   8

*BE & K Construction Co.* v. *NLRB*, 536 U.S. 516 (2002)……………..   9

*California Motor Transport Co.* v. *Trucking Unlimited*, 404 U.S. 508 (1972)……………………………………………………….   9

*Carey* v. *Hume*, 492 F.2d 631 (D.C. Cir. 1974)…………………………...   12

*Center for International Environmental Law* v. *Office of the United States Trade Representative*, 240 F. Supp. 2d 21 (D.D.C. 2003)…..   11

*Chase & Sanborn Corp.* v. *Nordberg*, 872 F.2d 397 (11th Cir. 1989)…   4, 7-8

*Common Cause* v. *Nuclear Regulatory Comm'n*, 674 F.2d 921 (D.C. Cir. 1982)……………………………………………………   10-11

*Eastern R.R. Presidents Conference* v. *Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961)……………………………………………………..   9, 9n

*Hustler Magazine* v. *Falwell*, 485 U.S. 46 (1988)……………………...   8

*King* v. *Califano*, 471 F. Supp. 180 (D.D.C. 1979)………………………   8

*Landmark Legal Foundation* v. *EPA*, 272 F. Supp. 2d 70 (D.D.C. 2003)………………………………………………………..   6-7

*McGregor Printing Corp.* v. *Kemp*, 811 F. Supp. 10 (D.D.C. 1993)….   12

*Professional Real Estate Investors, Inc.* v. *Columbia Pictures Industries, Inc.*, 508 U.S. 49 (1993)............................................... 9n

*In re Roche*, 448 U.S. 1312 (1980)............................................ 10

*In re Ryan*, 538 F.2d 435 (D.C. Cir. 1976).................................. 9n, 12

*In re Special Proceedings*, Nos. 03-2052, 04-1383 (1st Cir. Mar. 25, 2004)......................................................................... 11

*Tinsley* v. *Mitchell*, 804 F.2d 1254 (D.C. Cir. 1986)....................... 10

*United States* v. *Cuthbertson*, 630 F.2d 139 (3d Cir. 1980), *cert. denied*, 449 U.S. 1126 (1981)................................................... 3, 11

*United States* v. *Cutler*, 6 F.3d 67 (2d Cir. 1993)........................... 2, 3, 11

*United States* v. *LaRouche Campaign*, 841 F.2d 1176 (1st Cir. 1988)... 11

*United States* v. *United Mine Workers*, 330 U.S. 258 (1947)............... 2, 4

*United States* v. *Waksberg*, 112 F.3d 1225 (D.C. Cir. 1997)............. 2

*Washington Metropolitan Area Transit Comm'n* v. *Holiday Tours, Inc.*, 559 F.2d 841 (D.C. Cir. 1977)...................................... 11-12

*Webb* v. *District of Columbia*, 146 F.3d 964 (D.C. Cir. 1998)............ 5, 6

*Zerilli* v. *Smith*, 656 F.2d 705 (D.C. Cir. 1981)............................. 12

**Constitutional Provisions**

U.S. Const. Amend. I........................................................ passim

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

WEN HO LEE,                                                     :

                    Plaintiff,            :

- against -                                                       :
                              No. 1:99 CV 3380 (TPJ)

UNITED STATES DEPARTMENT OF                  :
JUSTICE, FEDERAL BUREAU OF
INVESTIGATION, and UNITED STATES             :
DEPARTMENT OF ENERGY,

                              :

                 Defendants.                :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## NON-PARTY REPORTERS' MEMORANDUM OF POINTS AND AUTHORITIES REGARDING PENALTIES TO BE IMPOSED SHOULD THE COURT FIND THE REPORTERS IN CIVIL CONTEMPT

Non-party *New York Times* reporters Jeff Gerth and James Risen, *Los Angeles Times* reporter Bob Drogin, Associated Press reporter H. Josef Hebert, and former Cable News Network reporter Pierre Thomas, now with ABC News (collectively, the "Reporters") respectfully submit this joint brief to address what this Court should do if it finds it necessary to hold any of the Reporters in contempt. The Reporters respectfully submit that, in light of the weighty constitutional questions at issue in this case, if the Court finds any of the Reporters in contempt, it should impose a nominal fine, payable to the Court, that is stayed pending appeal.

-2-

## ARGUMENT

The Reporters respectfully urge that should the Court find any of them in civil contempt, any fines imposed should be paid to the Court, not directly to Dr. Lee. A compensatory civil contempt fine such as the one Dr. Lee requests must be based on evidence of the complainant's actual loss; Dr. Lee must prove that he suffered monetary losses as a result of the Reporters' alleged failure to comply with the Order. *See United States* v. *United Mine Workers*, 330 U.S. 258 (1947); *United States* v. *Waksberg*, 112 F.3d 1225 (D.C. Cir. 1997). Dr. Lee has not even remotely demonstrated any actual monetary loss caused by the Reporters' alleged violation of the Order. Moreover, because this case presents such significant First Amendment issues, the Reporters respectfully request that the Court, should it determine to find any of the Reporters in civil contempt, should follow the examples of other courts by imposing a nominal fine and staying such fine pending appeal.

## I.   ANY CONTEMPT FINE SHOULD BE NOMINAL

The Reporters respectfully suggest that, if any penalty is to be imposed for contempt, a nominal fine would be most appropriate in this case. This Court has wide discretion in determining the appropriate penalty for any contempt finding, and there are many cases in which courts have exercised that discretion by levying minimal fines on journalists who have refused to disclose the identity of their confidential sources or to provide newsgathering materials due to assertions of the reporter's privilege. *See, e.g., United States* v. *Cutler*, 6 F.3d 67, 70 (2d Cir. 1993) (upholding contempt fine of $1.00 per day imposed on reporters and television stations for

-3-

refusing, on reporter's privilege grounds, to provide unpublished notes, outtakes and testimony in criminal contempt proceeding); *United States* v. *Cuthbertson*, 630 F.2d 139, 143 (3d Cir. 1980) (upholding contempt fine of $1.00 per day imposed on CBS for refusing, on reporter's privilege grounds, to produce for *in camera* review by the court, statements of potential government witnesses in a criminal trial), *cert. denied*, 449 U.S. 1126 (1981).

In *Cutler* and *Cuthbertson*, the courts entered *de minimis* fines pending appeal in light of the seriousness of the constitutional questions involved, implicitly recognizing that the weighty First Amendment issues needed to be squarely resolved by the court of appeals. Here, the Reporters respectfully submit, a nominal fine is particularly appropriate in light of the serious constitutional questions at the center of this case, the Reporters' responsiveness during the depositions to as many questions as possible, and the Reporters' good faith throughout these proceedings. Subjecting the Reporters to heavy penalties for asserting and defending, in good faith, the First Amendment rights of journalists to report effectively on issues of national importance makes little sense. This is especially true in light of this Court's finding that a contempt citation is the only procedural means for the Reporters to appeal this Court's ruling and obtain a final judicial resolution concerning the scope of their First Amendment rights. As the courts in *Cutler* and *Cuthbertson* concluded, a heavy fine is not warranted under such circumstances.

## II. ANY CONTEMPT FINE SHOULD BE PAYABLE TO THE COURT, NOT DR. LEE

Dr. Lee argues that any civil contempt fine imposed on the Reporters should be payable to him as a "compensatory" fine, rather than to the Court. Such relief is precluded here

-4-

as a matter of contempt law.  Moreover, it is also constitutionally prohibited, as a compensatory

fine in this case would impermissibly award Dr. Lee damages from the Reporters for exercising

their First Amendment rights.

As this Court has recognized, civil contempt fines are generally payable to the

court and not any of the parties.  *See* Transcript of Feb. 4, 2004 Status Hearing at 6 (any con-

tempt fine "would be as all civil fines are, payable to the United States, if it ever gets paid").  In

exceptional cases, where the court imposes a civil contempt fine as compensation, the complain-

ant must present evidence of his or her actual loss as a result of the contempt and the amount of

the fine must be based on that evidence.  *See United States* v. *United Mine Workers*, 330 U.S.

258, 304 (1947).  In such extraordinary cases, the complainant's "right. . . to the compensatory

fine is dependent upon the outcome of the basic controversy."  *Id.*  In other words, if the order

upon which the contempt is based is ultimately reversed, then the party seeking the compensa-

tory fine is not entitled to anything.  *See id.* at 295 ("The right  to remedial relief falls with an

injunction which events prove was erroneously issued . . . .").  Moreover, a compensatory con-

tempt fine cannot be used by the complaining party as an alternative means of collecting a poten-

tial monetary judgment from the defendant.  *See, e.g., Chase & Sanborn Corp.* v. *Nordberg*, 872

F.2d 397, 400-01 (11th Cir. 1989) ("If, as the trustee implicitly argues, the sanction allowed him

to collect through a contempt fine the amount of the judgment against the defendants, it cannot

be upheld.").

-5-

Here, Dr. Lee has presented no evidence at all of any actual loss suffered as a direct result of the Reporters' refusal to respond to his deposition questions.[1]  Indeed, his entire argument for having the fine paid directly to him is predicated entirely upon a single conclusory allegation — namely, that the Reporters' failure to provide him with their confidential source information has "increase[d] both Dr. Lee's litigation costs and his evidentiary burden." Application at 24.  Dr. Lee fails to show, however, how his purported increased burden translates into "actual loss" or how the Reporters' failure to testify caused him any damage at all.  Indeed, Dr. Lee twice acknowledges that the "lack of this information is not necessarily fatal to Dr. Lee's case." *Id.* at 23, 24.  Moreover, it is plain that the Reporters' assertions of their First Amendment rights have done nothing to "increase" Dr. Lee's evidentiary burden, which remains the same regardless of what the reporters do.

The cases Dr. Lee cites in support of the extraordinary remedy he seeks involved actions by a *party* in litigation to deliberately obstruct the opposing party's ability to pursue its case.  Most of those cases involve facts related to spoliation of evidence.  There may be good reasons to impose compensatory sanctions where one party engages in intentional spoliation for the purpose of obstructing another party's ability to collect damages from them.  But those reasons obviously have no bearing on a case, like this one, where a non-party asserts an evidentiary privilege for the express purpose of preserving a significant issue for appeal.

---

[1]    Dr. Lee should not be permitted to raise evidence of actual loss for the first time on reply.  *See A.J. McNulty & Co.* v. *Secretary of Labor,* 283 F.3d 328, 338 (D.C. Cir. 2002) ("because this point appears for the first time in the company's reply brief, we will not consider it").

-6-

The main case Dr. Lee cites in support of this extraordinary remedy he seeks, *Webb* v. *District of Columbia*, 146 F.3d 964 (D.C. Cir. 1998), involves circumstances so radically different than those at issue here — *i.e.,* intentional destruction of essential evidence by a defendant as opposed to a good faith assertion of the reporter's privilege by non-party journalists — that it effectively demonstrates why compensatory sanctions are *inappropriate* here. Dr. Lee cites the case for the general proposition that "compensatory sanctions are justified where, as here, the errant party's behavior 'severely hampered the other party's ability to present his case.'" Application at 23 (quoting *Webb*, 146 F.3d at 971). But even ignoring the fact that, unlike in *Webb*, none of the journalists are parties, that misrepresents the *Webb* court's holding. First, the case deals with the standard for awarding a default judgment against a defendant as a sanction for misconduct, and *not*, as Dr. Lee suggests, with the standard for awarding compensatory sanctions generally. *See Webb*, 146 F.3d at 971 ("we set forth three basic justifications that support the use of dismissal or default judgment as a sanction for misconduct"). Second, Dr. Lee's selective quotation of the case fails to disclose that it sets forth a standard for relief that Dr. Lee does not even come close to meeting. In the same sentence Dr. Lee partially quotes in his brief, the court explains that the sanction does not apply unless "the other party 'has been so prejudiced by the misconduct that it would be unfair to require him to proceed further in the case.'" *Id.* Even Dr. Lee, who concedes that the Reporters' refusal to answer his questions "is not necessarily fatal to [his] case," Application at 23, does not claim that that standard is met here.

-7-

Dr. Lee's reliance on *Landmark Legal Foundation* v. *EPA*, 272 F. Supp. 2d 70 (D.D.C. 2003), in support of compensatory sanctions here is similarly misplaced.  In that case, the court imposed a compensatory sanction against a government agency that intentionally destroyed potentially responsive information in a FOIA case in violation of the court's order to preserve such information.  Unlike the Reporters' actions in this case, the sanctioned party was the defendant, whose actions in *Landmark Legal Foundation* made it impossible for the plaintiff to proceed.  Moreover, the information sought "was the point of th[e] FOIA suit, rather than a means to prove a cause of action."  *Id.* at 85.  The facts here are so radically different — third parties asserting a privilege in good faith in a case where the plaintiff concedes that his case can go forward without the information — that the cases cannot seriously be compared.

In the end, Dr. Lee acknowledges that his true purpose in seeking payment from the journalists through the contempt process is to obtain some recompense should he fail to prevail in his Privacy Act claim, *i.e.*, damages for his mental anguish and loss of reputation.  Application at 24-25.  Indeed, as justification for having a contempt fine run directly to him, Dr. Lee argues in his Application:

> "Where, as here, the safeguards erected by the Privacy Act fail, the Act permits wronged parties such as Dr. Lee to recover their 'actual damages,' which include out-of-pocket expenses as well as nonpecuniary losses such as mental anguish and loss of reputation.  It would surely frustrate the intent and purpose of the Act if, as a result of the journalists' contumacy, Dr. Lee — the very individual injured by the illegal government leaks — were left without any recompense, while the responsible government officials continued to hide under the cloak of the 'reporter's privilege' and the journalists simply purged their contempt by paying a court fine."  Application at 23-24.

-8-

Thus, Dr. Lee essentially argues that because of his potential inability to prevail in his underlying case — a case to which the Reporters are not parties — the Reporters should be made to pay him directly so that he can recover some money for his alleged Privacy Act damages. This, of course, is precisely what the contempt case law prohibits. *See Chase & Sanborn Corp.*, 872 F.2d at 401 ("If, as the trustee implicitly argues, the sanction allowed him to collect through a contempt fine the amount of the judgment against the defendants, it cannot be upheld.").

Dr. Lee cites no cases awarding compensatory fines in the reporter's privilege context, and, as far as we are aware, there are none. In light of the serious constitutional ramifications that flow from ordering a journalist to make a payment directly to Dr. Lee of the sort he seeks here, this Court should not accept Dr. Lee's invitation to be the first court to provide for such an award.

Additionally, by asking the Court to award a contempt fine directly to Dr. Lee, plaintiff is attempting to make an end-run around well-established principles of First Amendment law: Dr. Lee would not be able to obtain damages directly from any of the Reporters if he were to bring a suit directly against them. There is no question, for example, that it does not violate the Privacy Act for a journalist to *receive* and publish information; the Privacy Act only forbids the Government's disclosure of certain information. *See Alexander* v. *FBI*, 193 F.R.D. 1, 6 (D.C. Cir. 2000); *King* v. *Califano*, 471 F. Supp. 180, 181 (D.D.C. 1979). Thus, Dr. Lee has no direct cause under the Privacy Act against the Reporters; his sole avenue of recourse is against the

-9-

Government. Nor can Dr. Lee, who has scrupulously avoided commencing a libel action against any of the Reporters, seek damages from the Reporters under any other theory. Under *Hustler Magazine* v. *Falwell*, 485 U.S. 46 (1988), reputational damages would be available only upon a showing that the Reporters made a false statement of fact, and did so with actual malice. Further, under *Bartnicki* v. *Vopper*, 532 U.S. 514 (2001), the Supreme Court held that the First Amendment forbids the imposition of sanctions on a journalist who lawfully receives and discloses truthful, newsworthy information, even if the information was unlawfully obtained by his source. Thus, by speaking with government officials about Dr. Lee and publishing information gathered from them, the Reporters incurred no liability to Dr. Lee, even if those officials unlawfully disclosed Privacy Act-protected information. Under the circumstances, a compensatory fine would violate the First Amendment.

Finally, imposing compensatory damages on the Reporters for unsuccessfully litigating in good faith their reporter's privilege claim violates the Reporter's First Amendment right to petition the courts under *Eastern R.R. Presidents Conference* v. *Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961) and its progeny. Under *Noerr* and its progeny, parties are immune from antitrust liability for good faith attempts to petition the courts. *See California Motor Transport Co.* v. *Trucking Unlimited*, 404 U.S. 508 (1972) (applying *Noerr* to judicial proceedings). In *BE & K Construction Co.* v. *NLRB*, 536 U.S. 516 (2002), the Court recently extended *Noerr*'s principles to apply to lawsuits outside of the antitrust area. Given that this Court has

-10-

suggested that a contempt citation is the only means for the Reporters to appeal this Court's de-nial of their motions to quash and for a protective order,[2] it would violate *Noerr* to allow Dr. Lee to collect damages from the Reporters for merely exercising their First Amendment right to peti-tion the courts on this important constitutional issue.[3]

This Court has already noted its inclination to require that any compensatory sanctions be paid directly to the Court, and not to Dr. Lee at least through the conclusion of any appeal. Transcript of Feb. 4, 2004 Status Hearing at 7. Such an approach is quite correct. Plain-tiff has not shown and cannot show that he is entitled to receive any fine directly from any of the Reporters.

## III.   ANY CONTEMPT FINE SHOULD BE STAYED PENDING APPEAL

This Court has indicated its inclination to stay pending appeal any fines that it awards. If the Court finds any of the Reporters in contempt, imposition of any fines or sanctions should be stayed pending an appeal. Transcript of Feb. 4, 2004 Status Hearing at 6 ("And then it would be my intention, I would expect, to stay that [monetary sanction] pending an application

---

[2]   *See also In re Ryan*, 538 F.2d 435, 437 (D.C. Cir. 1976) (non-party compelled to give testimony not entitled to immediate review unless first disobeys and is held in contempt).

[3]   While there is an exception to the *Noerr* doctrine for sham litigation — defined in the case law as liti-gation that is both objectively unreasonable "in the sense that no reasonable litigant could realistically expect success on the merits" and brought subjectively in bad faith — there is (and can be) no allega-tion that the Reporters' assertion of privilege here are a "sham." *See Professional Real Estate Inves-tors, Inc.* v. *Columbia Pictures Industries, Inc.*, 508 U.S. 49, 60-61 (1993).

-11-

to the Court of Appeals."). This is consistent with established law in the privilege context. If the Court finds any of the Reporters in contempt, imposition of any fines or sanctions should be stayed pending an appeal. "Without such a stay, [the reporter] must either surrender his secrets (and moot his claim of right to protect them) or face" harsh sanctions, an "unpalatable choice." *In re Roche*, 448 U.S. 1312, 1316 (1980) (Brennan, J.) (granting stay of state court's finding of reporter in civil contempt pending petition for writ of certiorari and disposition thereof). A stay would ensure that the Reporters receive appellate review of the important First Amendment issues raised in this case before any of them suffer any penalty for non-compliance with the Court's order.

Courts routinely stay the imposition of contempt sanctions pending appeal. *See, e.g.*, *Tinsley v. Mitchell*, 804 F.2d 1254 (D.C. Cir. 1986) (trial court stayed civil contempt fine of $50 per day after attorney refused to pay his share of attorneys' fees); *Common Cause* v. *Nuclear Regulatory Comm'n*, 674 F.2d 921 (D.C. Cir. 1982). This is particularly true with respect to reporter's privilege cases raising First Amendment issues. *See, e.g.*, *United States* v. *Cutler*, 6 F.3d 67, 70 (2d Cir. 1993) ($1/day fine stayed pending appeal); *United States* v. *Cuthbertson*, 630 F.2d 139, 143 (3d Cir. 1980) (same); *In re Special Proceedings*, Nos. 03-2052, 04-1383 (1st Cir. Mar. 25, 2004) (granting stay of contempt sanction against reporter pending expedited appeal); *United States* v. *La Rouche Campaign*, 841 F.2d 1176, 1177 (1st Cir. 1988) (civil contempt fine against NBC stayed pending appeal regarding order compelling NBC to produce non-broadcast material).

-12-

Both the gravity of the legal issues raised here and the equities favor a stay. A stay pending appeal is appropriate if: (1) the Reporters have a probability of success on the merits; (2) the Reporters will suffer irreparable injury if the stay is denied; (3) issuance of the stay will not cause substantial harm to other parties; and (4) the public interest will be served by issuance of the stay. *See Center for International Environmental Law* v. *Office of the United States Trade Representative*, 240 F. Supp. 2d 21 (D.D.C. 2003). It is not necessary, however, to demonstrate a substantial likelihood of success on the merits. *Id.* In *Center for International Environmental Law*, although the defendants did not show a high probability of success on the merits, the court granted a stay pending appeal because they had demonstrated a "substantial case on the merits" and "made a strong showing of irreparable harm." *Id.* at 22. *See also Washington Metropolitan Area Transit Comm'n* v. *Holiday Tours, Inc.*, 559 F.2d 841, 843-44 (D.C. Cir. 1977) (holding that "a court, when confronted with a case in which the other three factors strongly favor interim relief may exercise its discretion to grant a stay if the movant has made a substantial case on the merits" and that a stay "is appropriate when a serious legal question is presented, when little if any harm will befall other interested persons or the public and when denial of the order would inflict irreparable injury on the movant"); *McGregor Printing Corp.* v. *Kemp*, 811 F. Supp. 10, 12 (D.D.C. 1993) ("Even where the moving party has not established a likelihood that it will prevail on the merits, a court may decide to stay enforcement of its ruling if it finds that plaintiff has presented a 'serious legal question' and that the other three factors weigh heavily in plaintiff's favor.") (quoting *Holiday Tours*, 559 F.2d at 844); *American Cetacean Society* v. *Baldridge*, 604 F. Supp. 1411, 1414 (D.D.C. 1985) (the trial court "must weigh the probability

-13-

of success on appeal in a 'balance of equities' with the other three factors") (quoting *Holiday Tours*, 559 F.2d at 844).

The Reporters respectfully submit that, at the very least, the Court's basis for ordering the Reporters to reveal their confidential sources raises serious First Amendment questions. *See Zerilli* v. *Smith*, 656 F.2d 705 (D.C. Cir. 1981); *Carey* v. *Hume*, 492 F.2d 631 (D.C. Cir. 1974).   Under prevailing case law, the Reporters had to decline to comply with the Court's Order in order to obtain immediate review of that Order.   *See In re Ryan*, 538 F.2d 435, 437 (D.C. Cir. 1976) (non-party compelled to give testimony not entitled to immediate review unless first disobeys and is held in contempt).   If the Reporters are made to suffer for pursuing their right to appellate review, they will suffer irreparable injury — either in the form of the Court's punishment or in their loss of First Amendment rights.

By contrast, Dr. Lee will not be substantially harmed by waiting for the appeal's conclusion.   And the public interest will be served by entry of a stay.   Given the serious First Amendment issues in this case, and the potential chilling effect a contempt sanction will have on all reporters working on matters of great public import, *see* Affidavits of  Scott Armstrong, Jack Nelson, Anna Nelson, and Jeffrey Smith, attached hereto as Exhibits A-D, the public will be well-served by having the legal issues in this case conclusively resolved before any contempt sanction is imposed upon any of the Reporters.

-14-

## CONCLUSION

Any contempt fines imposed by the Court should be paid to the Court, not to Dr. Lee. Further, any contempt fines imposed should be nominal and should be stayed pending determination of the significant First Amendment issues raised by this case.

Dated: July 30, 2004
Respectfully submitted,

CAHILL GORDON & REINDEL LLP
Attorneys for Non-Party Reporters Jeff Gerth
and James Risen

HOLLAND & KNIGHT LLP
Attorneys for Non-Party Reporter Pierre Thomas

By: _Charles D. Tobin /with permission_          By: _Charles D. Tobin_

Donald J. Mulvihill (DC Bar No. 056242)
Floyd Abrams
Joel Kurtzberg
Karen Kaiser
1990 K Street, N.W.
Washington, D.C. 20006-1103
(202) 862-8900

Charles D. Tobin (DC Bar No. 455593)
Jennifer M. Mason (DC Bar No. 478632)
Ethan Arenson (DC Bar No. 473296 )
2099 Pennsylvania Ave., N.W.
Suite 100
Washington, D.C. 20006

LEVINE SULLIVAN KOCH & SCHULZ
L.L.P.
Attorneys for Non-Party Reporters H. Josef
Hebert and Bob Drogin

By: _Charles D. Tobin /with permission_

Lee Levine (DC Bar No. 343095)
David A. Schulz (DC Bar No. 459197)
Nathan E. Siegel (DC Bar No. 446253)
Chad R. Bowman (DC Bar No. 484150)
1050 Seventeenth Street, N.W., Suite 800
Washington, D.C. 20036

## CERTIFICATE OF SERVICE

I, Charles D. Tobin, certify that a true and correct copy of the foregoing Memorandum of Points and Authorities Regarding Penalties to be Imposed Should the Court Find the Reporters in Civil Contempt was electronically filed and served, with a copy sent by first class mail, on the 30 day of July, 2004, upon the parties listed below:

Attorneys for Plaintiff Wen Ho Lee:

Brian A. Sun, Esq.
Jones Day
555 West Fifth Street
Suite 4600
Los Angeles, CA 90013-1025

Attorneys for Defendants, U.S. Department of Justice,
    Federal Bureau of Investigations, and U.S. De-
    partment of Energy:

Anthony Joseph Coppolino, Esq.
Richard G. Phillips, Jr., Esq.
U.S. Department of Justice Civil Division
20 Massachusetts Avenue, N.W.
Washington, D.C.  20530

_____
Charles D. Tobin