**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| WEN HO LEE, | : |
| Plaintiff, | : |
| - against - | : |
| | No. 1:99 CV 3380 (TPJ) |
| UNITED STATES DEPARTMENT OF | : |
| JUSTICE, FEDERAL BUREAU OF | |
| INVESTIGATION, and UNITED STATES | : |
| DEPARTMENT OF ENERGY, | |
| | : |
| Defendants. | |
| | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## RESPONSE OF NON-PARTY REPORTER JAMES RISEN TO ORDER TO SHOW CAUSE WHY HE SHOULD NOT BE HELD IN CIVIL CONTEMPT

CAHILL GORDON & REINDEL LLP
Donald J. Mulvihill (DC Bar No. 056242)
Floyd Abrams
Joel Kurtzberg
Karen Kaiser
1990 K Street, N.W.
Washington, D.C.  20006-1103
Attorneys for Non-Party Reporter James Risen

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ............................................................................................ ii

BACKGROUND ........................................................................................................ 4

ARGUMENT .............................................................................................................. 5

     I.      DR. LEE BEARS A HEAVY BURDEN IN ESTABLISHING
            CONTEMPT ....................................................................................... 6

     II.     DR. LEE CANNOT MEET HIS BURDEN OF
            DEMONSTRATING VIOLATION OF THE COURT'S
            ORDER .............................................................................................. 7

CONCLUSION .......................................................................................................... 14

# TABLE OF AUTHORITIES

*Page*

*Cases*

*Armstrong* v. *EOP*, 1 F.3d 1274 (D.C. Cir. 1993)...............................      6

*Carey* v. *Hume*, 492 F.2d 631 (D.C. Cir. 1974) ...........................……      4

*Clyburn* v. *News World Communications, Inc.*, 903 F.2d 29 (D.C. Cir.
1990)..................................................................................…..……..      4

*Cobell* v. *Babbitt*, 37 F. Supp. 2d 6 (D.D.C. 1999) .................…..………      7

*Cobell* v. *Norton*, 231 F. Supp. 2d 315 (D.D.C. 2002).....................      6-7

*Common Cause* v. *NRC*, 674 F.2d 921 (D.C. Cir. 1982)...................      6

*Ford* v. *Kammerer*, 450 F.2d 279 (3d Cir. 1971)............................      6

*Joshi* v. *Professional Health Services, Inc.*, 817 F.2d 877 (D.C. Cir.
1987) ..................................................................................…..……      6

*Landmark Legal Foundation* v. *EPA*, 272 F. Supp. 2d 70 (D.D.C.
2003)...............................................................................................      13

*Lee* v. *Department of Justice*, 287 F. Supp. 2d 15 (D.D.C. 2004).........      2

*SEC* v. *Life Partners, Inc.*, 912 F. Supp. 4 (D.D.C. 1996)...................      6

*Southern Ry.* v. *Brotherhood of Locomotive Firemen and Enginemen*,
337 F.2d 127 (D.C. Cir. 1964)........................................................      6

*Tobey* v. *National Labor Relations Board*, 40 F.3d 469 (D.C. Cir.
1994)...............................................................................................      8n

*Washington-Baltimore Newspaper Guild* v. *Washington Post Co.*, 626
F.2d 1029 (D.C. Cir. 1980) ..........................................…..…………      5-6, 13

*Zerilli* v. *Smith*, 656 F.2d 705 (D.C. Cir. 1981) ...........................……      4

***Constitutional Provisions***

U.S. Const. amend. I ……………………………………………...        4

***Statutes***

Privacy Act  5 U.S.C. § 552(a) (2000)…………………………………        8n

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

WEN HO LEE,                                    :

                         Plaintiff,       :

- against -                                     :

                                            No. 1:99 CV 3380 (TPJ)

UNITED STATES DEPARTMENT OF           :
JUSTICE, FEDERAL BUREAU OF
INVESTIGATION, and UNITED STATES      :
DEPARTMENT OF ENERGY,

                                       :

                         Defendants.       :

                                       :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### RESPONSE OF NON-PARTY REPORTER JAMES RISEN TO ORDER TO SHOW CAUSE WHY HE SHOULD NOT BE HELD IN CIVIL CONTEMPT

        Non-party *New York Times* reporter James Risen respectfully submits this brief in response to the Court's June 29, 2004 Order to Show Cause as to why he should not be held in civil contempt for violating this Court's Order of October 9, 2003.[1] The Court's October 9th Order denied

---

[1]     Dr. Lee's Application for an Order to Show Cause seeking to hold the Reporters in contempt is addressed to all the non-party reporters (James Risen, Jeff Gerth, Bob Drogin, H. Josef Hebert, Pierre Thomas and Walter Pincus) subpoenaed to testify in his Privacy Act suit against the Government. Each Reporter has submitted separate briefs in response to Dr. Lee's contempt motion, but all Reporters collectively join in submitting a brief, filed concurrently herewith, concerning the penalties to be imposed should the Court find the Reporters in civil contempt for alleged violation of the October 9th Order.

Mr. Risen's motion to quash the subpoena directed against him by Plaintiff Lee, and ordered him (as well as the other Reporters) to sit for deposition and, if asked, to "truthfully answer questions as to the identity of any officer or agent of defendants, or any of them, who provided information to [him] directly about Wen Ho Lee, and . . . the nature of the information so provided." *Lee* v. *Department of Justice*, 287 F. Supp. 2d 15, 25 (D.D.C. 2004).

Mr. Risen asserted the reporter's privilege in response to numerous questions during his December 18, 2003 deposition. But this is a far cry from satisfying Dr. Lee's demanding burden of coming forward with "clear and convincing evidence" that Mr. Risen has violated this Court's October 9th Order. And when one examines the particular questions Dr. Lee places at issue and relies upon in support of seeking contempt against Mr. Risen, it is clear that his motion falls short of the necessary standard for this Court to find Mr. Risen in civil contempt, because such questions generally fall into one or more of the following three categories:

- First, for a number of the questions, while Mr. Risen initially declined to respond based on the qualified reporter's privilege, he subsequently changed his assertion of privilege in his errata sheet and fully answered the question at issue. Such questions cannot reasonably form the basis for a contempt finding, and Dr. Lee's continued reliance on such questions is insupportable.

- Second, most of the questions posed by Dr. Lee's counsel and relied upon in his motion did not implicate the Court's October 9th Order in any way, as they did not seek the identity of any officer or agent of defendants who directly provided information to Mr. Risen about Dr. Lee. They sought, *inter alia*, information about typical interviews with government employees, communications in general with certain individuals, and general background information. If the underlying question does not implicate the Court's Order, then Mr. Risen's refusal to answer the question cannot form the grounds for contempt. There can be no violation of the Order by refusing to answer questions not covered by the Order.

-3-

- Third, as to the remainder of the questions that Dr. Lee notes that Mr. Risen re-
  fused to answer, the substance of the information sought from Mr. Risen does
  not implicate the Privacy Act, the underlying statute in Dr. Lee's lawsuit
  against the Government, and for which Dr. Lee sought Mr. Risen's testimony in
  the first place. By definition, such questions could not provide information
  relevant to Dr. Lee's case; Mr. Risen's assertion of the privilege in those in-
  stances therefore cannot place him in violation of the Court's Order. For ex-
  ample, some of these questions merely ask if Mr. Risen generally spoke with
  certain named officials both on- or off-the-record, not if he spoke with these of-
  ficials in connection with specific statements appearing in articles that are about
  or identifying Dr. Lee. If the statements are not about or identifying Dr. Lee, or
  are part of a system of records, they cannot implicate the Privacy Act, and thus
  cannot form the basis of contempt against Mr. Risen.

Dr. Lee seems to assume, and essentially bases his entire argument on the assumption, that simply because Mr. Risen asserted the reporter's privilege numerous times and declined to answer certain questions, he is in contempt of the Court's Order. That is not the case. Rather, Dr. Lee must make a very specific showing as to why Mr. Risen's assertions of privilege violate the Court's October 9th Order. And this Dr. Lee fails to do entirely.

Dr. Lee quotes only seven instances where Mr. Risen asserted the privilege, and instead relegates to a string-cite the remainder of the instances on which he relies in seeking contempt. The string-cite simply follows Dr. Lee's conclusory assertion that Mr. Risen violated the Order. He never attempts to compare the text of the Court's Order with the specific questions on which he relies.[2] Nor does he even attempt to categorize them in any way. Dr. Lee cannot evade his burden of

---

[2] The seven instances that Dr. Lee discusses in more detail in his motion (Application at 17-18) are addressed at length herein. The remaining cites, for which Dr. Lee provides no explanation or discussion at all, but merely a string of citations, are dealt with in a more abbreviated manner here, too.

-4-

proving that the Court's Order was violated for a contempt finding, and he cannot rest his motion on unfounded assertions.[3]

Dr. Lee's contempt motion should be denied in its entirety.

## BACKGROUND

Dr. Lee subpoenaed the depositions of the Reporters, including Mr. Risen, in late 2002, seeking, *inter alia*, their testimony concerning the employment information of their confidential sources in various articles they wrote concerning Dr. Lee.  The Reporters moved to quash the subpoenas on the basis that the qualified First Amendment reporter's privilege recognized in this Circuit protected them against compelled disclosure of such confidential information because (a) the information sought was not central to Dr. Lee's case and (b) Dr. Lee had failed to exhaust all reasonable alternative sources of information. *See, e.g., Carey* v. *Hume*, 492 F.2d 631 (D.C. Cir. 1974); *Zerilli* v. *Smith*, 656 F.2d 705 (D.C. Cir. 1981); *Clyburn* v. *News World Communications, Inc.*, 903 F.2d 29 (D.C. Cir. 1990).  After full briefing, this Court held oral argument on the motions on August 27, 2003, and in its October 9th Order, denied the Reporters' motions to quash and ordered them to sit for depositions.

In its Order, the Court directed the Reporters, including Mr. Risen, that if asked, to "truthfully answer questions as to the identity of an officer or agent of defendants, or any of them,

---

[3]   In this response brief, Mr. Risen also relies upon and incorporates the Affidavits of Scott Armstrong, Anna Nelson, Jack Nelson and Jeffrey H. Smith, filed herewith as Exhibits 1-4 in support of his opposition.

-5-

who provided information to them directly about Wen Ho Lee, and as to the nature of the information so provided." Order, at 17. On December 18, 2003, Mr. Risen sat for his deposition, and during the deposition, asserted his privilege not to respond to certain questions posed by Dr. Lee's counsel based on his rights under the First Amendment, federal common law, and the D.C. Shield Law. Following all reporter depositions, Dr. Lee moved for an Order to Show Cause seeking to hold the Reporters in civil contempt, arguing that the Reporters should be made to pay a fine directly to him to compensate him for losses allegedly sustained as a result of their violation of the Court's October 9th Order. On June 29, 2004, this Court granted Dr. Lee's Application for an Order to Show Cause and directed all Reporters to respond as to why they should not be held in contempt. Because none of the questions relied on by Dr. Lee for which Mr. Risen asserted the privilege violate the Court's Order — because they did not call on Mr. Risen to divulge the identity of an officer or agent of defendants who provided information to him about Dr. Lee, did not implicate the Privacy Act, or were subsequently answered in Mr. Risen's errata sheet — Mr. Risen should not be held in contempt.

## ARGUMENT

Civil contempt is an extraordinary remedy that requires a heavy burden of proof, requiring the party seeking contempt to establish his claim by clear and convincing evidence. *See Washington-Baltimore Newspaper Guild* v. *Washington Post Co.*, 626 F.2d 1029, 1031 (D.C. Cir. 1980). Upon careful examination of the merits of Dr. Lee's motion, it is clear that Dr. Lee has not even remotely met his burden here.

-6-

## I.    DR. LEE BEARS A HEAVY BURDEN IN ESTABLISHING CONTEMPT

Dr. Lee is attempting to hold Mr. Risen — as well as all of the Reporters — in contempt of Court for refusing to answer certain questions posed to him during his deposition.  This is a difficult charge to sustain, one that requires a petitioner in a civil contempt case to meet "a heavy burden of proof, often described as proof by 'clear and convincing evidence,' that the respondent violated the court's prior order."  *Washington-Baltimore Newspaper Guild* v. *Washington Post Co.*, 626 F.2d 1029, 1031 (D.C. Cir. 1980).  Because contempt is an "extraordinary" remedy, "courts rightly impose it with caution."  *Joshi* v. *Professional Health Services, Inc.*, 817 F.2d 877, 879 n.2 (D.C. Cir. 1987).  The court order in question is to be read narrowly.  *See Armstrong* v. *EOP*, 1 F.3d 1274, 1289 (D.C. Cir. 1993).   Any ambiguities must be resolved in favor of the party charged with contempt.  *See Common Cause* v. *NRC*, 674 F.2d 921, 927-28 (D.C. Cir. 1982); *Ford* v. *Kammerer*, 450 F.2d 279, 280 (3d Cir. 1971) (reversing contempt judgment because "ambiguities and omissions in orders redound to the benefit of the person charged with contempt").

Courts enjoy broad discretion in determining whether or not to hold a party in civil contempt, but may not make a finding of contempt "if there are any grounds for doubt as to the wrongfulness of the defendants' conduct."  *SEC* v. *Life Partners, Inc.*, 912 F. Supp. 4, 11 (D.D.C. 1996).  Moreover, even if a technical violation is found, courts may excuse the conduct upon a finding that the violation is insubstantial.  *See Southern Ry.* v. *Brotherhood of Locomotive Firemen and Enginemen,* 337 F.2d 127, 135 (D.C. Cir. 1964); *see also Cobell* v. *Norton*, 231 F. Supp. 2d 315,

-7-

320 (D.D.C. 2002) ("a court is not required to impose a contempt sanction every time a violation of the court order is proved").

As a matter of law, "'[t]wo requirements must be met before a party . . . may be held in civil contempt. First, the court must have fashioned an order that is clear and reasonably specific. Second, the defendant must have violated that order.'" *Cobell* v. *Norton*, 231 F. Supp. 2d 315, 320 (D. D.C. 2002) (quoting *Cobell*  v. *Babbitt*, 37 F. Supp. 2d 6, 9 (D.D.C. 1999)).  Here there is no dispute that the Court's October 9th Order was clear and specific, and understood by Mr. Risen. There is no evidence, however, that Mr. Risen violated that Order.

Dr. Lee claims that Mr. Risen violated the Order when he refused to answer certain questions posed to him during his deposition.  But he fails to demonstrate — as he must — how Mr. Risen's refusal to answer the questions at issue actually violated the Court's Order.  Dr. Lee offers no discussion of these questions as compared to the language of the Order, or otherwise attempts to explain the basis for his conclusory assertions.  Dr. Lee's unsubstantiated declaration that Mr. Risen violated the Order, followed by a string of citations with references to questions that have nothing to do with Dr. Lee or his underlying case, is hardly sufficient for a contempt finding under this stringent standard.

## II.   DR. LEE CANNOT MEET HIS BURDEN OF DEMONSTRATING VIOLATION OF THE COURT'S ORDER

Dr. Lee argues that Mr. Risen should be held in contempt of court for his failure to respond to certain questions, and identifies the specific subset of questions and assertions of privi-

-8-

lege that form the basis of his motion. *See* Application at 17-18.[4] Within that subset, Dr. Lee only

quotes seven instances, articulating the particular question and response on which he relies. None

of them violates the Court's Order. The remaining instances are buried in a string cite that does not

demonstrate much of anything. *Id.*[5]   A careful examination of the subset of questions and asser-

tions of privilege that forms the basis for Dr. Lee's motion — an analysis which Dr. Lee never per-

forms — makes clear that they generally fall into one of three categories: (1) questions that were

subsequently changed in Mr. Risen's errata sheet and thus were fully answered; (2) questions that

do not implicate the Order as they do not seek the identity of any officer or agent of defendants who

directly provided information to Mr. Risen about Dr. Lee; and (3) questions that are irrelevant be-

cause they do not implicate the Privacy Act as they are not about or identifying Dr. Lee.[6]

---

[4]   Dr. Lee cites to and relies on only a portion of the alleged "115" instances in which Mr. Risen asserted the reporter's privilege. *See* Application at 18.

[5]   Pretermitting the legal insufficiency of Dr. Lee's motion for the reasons outlined herein, it is noteworthy that Dr. Lee provided some (albeit limited) discussion for only seven of the more than 60 instances he cites where Mr. Risen invoked the reporter's privilege, preferring instead to rely on a "string cite" as his sole explanation and justification for seeking a contempt citation. Dr. Lee does not attempt to explain how these citations are actually violations of the Court's Order, but instead relies on his *ipse dixit* assertion.

[6]   The Privacy Act, 5 U.S.C. § 552(a), generally provides for a cause of action when a federal agency wrongfully discloses records pertaining to a person. To implicate the Privacy Act, the information disclosed must be contained in a system of records, must be about an individual, and must either contain the individual's name or other identifying particular about the individual. *See Tobey* v. *NLRB*, 40 F.3d 469 (D.C. Cir. 1994). Not all statements or disclosures implicate the Privacy Act. If the underlying statement on which Mr. Risen was questioned was not one that would implicate the Privacy Act, then Mr. Risen's failure to respond to such questions cannot reasonably form the basis for holding Mr. Risen in contempt. Dr. Lee should not be permitted to circumvent this critical step in his motion.

**The Seven Quoted Questions and Assertions**
**of Privilege**

Dr. Lee bases his argument for contempt on the fact that Mr. Risen refused to answer

certain questions posed to him, only seven of which are quoted — but not examined or discussed —

in his motion.  These seven instances, none of which are sufficient to show violations of the Court's

Order, are as follows: (1) 27: 21-24; (2) 40: 5-9, 10-13; (3) 40: 14-16; (4) 41: 20 - 42: 9; (5) 47: 15-

17; (6) 65: 4-7; and (7) 159: 19-24.  Mr. Risen asserted the reporter's privilege in response to each

of these questions.

- The first question, 27: 21-24, asks: "Now have you ever communicated with [Notra Trulock]?"  This question is not sufficient to hold Mr. Risen in contempt because it does not implicate the Court's Order, as it does not in any way seek information about the identity of an officer or agent who provided information to Mr. Risen about Dr. Lee.  Rather, the question discusses Mr. Risen's communications with Mr. Trulock generally "on this case," communications that may not have been about Dr. Lee or may not have generated information implicating the Privacy Act.  The question clearly does not at all discuss Dr. Lee.

- The first part of the second question, 40: 5-9, asks: "Is it typical when you're talking to an employee at the, a government employee about a case, that is it typical to talk to that individual both on and off the record?"  This question is not sufficient to hold Mr. Risen in contempt because it has nothing at all to do with Dr. Lee.  It is about Mr. Risen's general interviewing tactics and not about the identity of an officer or agent of defendants who provided information to him about Dr. Lee.  As such, it does not implicate the Court's Order.  What's more, the response to this question was later changed by Mr. Risen in his errata sheet to: "Speaking generally, and not referring to anything in this case, there have been stories I have worked on in which I have talked to sources both on and off the record."

  The next part of the question, 40: 10-13, asks: "Did you in fact in Dr. Lee's case talk to various government employees both on and off the record?"  This question is also insufficient to hold Mr. Risen in contempt because while generally about Dr. Lee, it does not seek the type of information covered by the Court's October 9th Order, as it does not seek the identity of an officer or agent of defendants who provided this information; nor can such statements form the basis of a Privacy Act claim.

-10-

- The third question, 40: 14-16, asks: "Do you remember when was the first time you heard the name Notra Trulock?" For the same reasons as above — namely, that Dr. Lee is not even referenced in the question — this question is not sufficient to hold Mr. Risen in contempt because it does not implicate the Court's Order or the Privacy Act.

- The fourth question, 41: 20 - 42: 9, asks: "Were you at a Congressional hearing when Mr. Trulock testified that Bill Richardson, then the Secretary of Energy, had disclosed to you the identity of Dr. Lee? . . . What was your reaction to that testimony? . . . You weren't happy with it, were you?" Notwithstanding the fact that this series of questions does not implicate the Court's Order or the Privacy Act at all, as the questions do not discuss Dr. Lee, the answers were subsequently changed in Mr. Risen's errata sheet. In response, rather than asserting a privilege, Mr. Risen responded: "I thought that Trulock did not know what he was talking about." The remainder of the assertions of privilege in this series were deleted for consistency with this response. Accordingly, this question is not sufficient to hold Mr. Risen in contempt.

- The fifth question, 47: 15-17, asks: "Did you know Mr. Trulock to be someone with a background in intelligence matters?" For the same reasons — that this question does not discuss Dr. Lee at all or the sources of information to Mr. Risen about Dr. Lee — the question does not implicate the Court's Order or the Privacy Act; it is entirely insufficient to hold Mr. Risen in contempt. Further, Mr. Risen's answer was subsequently changed in his errata sheet from an assertion of privilege to: "I eventually learned that, yes."

- The sixth question, 65: 4-7, asks: "Do you understand the term government investigators to include investigators employed by Congressional committees?" This question also is insufficient to hold Mr. Risen in contempt because it does not seek information that would implicate the Privacy Act, as it is not about or identifying Dr. Lee. It also does not ask about the identity of any officer of agent of the defendants. For either reason, it is not sufficient to hold Mr. Risen in contempt.

- The seventh question, 159: 19-24 addresses an exhibit shown to Mr. Risen during his deposition which was a copy of a phone message log for Mr. Collingwood. The question asks: "Lower right-hand corner, Mr. Collingwood had a message on March 1, 1999 from someone named Jim Risen, NYT. Is that you?" This question clearly has nothing at all to do with Dr. Lee, Mr. Risen's sources, or the newspaper articles. As such, it neither implicates the Order nor the Privacy Act and is not sufficient to hold Mr. Risen in contempt.

-11-

Not once in the discussion of these seven questions does Dr. Lee attempt to explain *how* Mr. Risen's assertion of privilege in response to these questions allegedly violates the Court's October 9th Order. Instead, he stresses that Mr. Risen invoked the privilege "even in response to a question concerning *his own identity*." Application at 18 (emphasis in original). Mr. Risen's identity, however, is not the subject of the Court's October 9th Order, and accordingly, cannot form the basis of a contempt citation for refusal to answer questions in violation of that Order. The Court did not order Mr. Risen to answer questions as to his own identity, general discussions with certain individuals, or questions about interviewing tactics; it ordered Mr. Risen to respond to a very specific category of questions. Dr. Lee provides no explanation of how these questions and assertions of privilege actually violate the Court's Order, or any justification for seeking a contempt citation based on Mr. Risen's assertions of privilege. Mr. Risen should not be held in contempt for Dr. Lee's failure to ask appropriate questions or properly evaluate the merits of Mr. Risen's responses. The burden is on Dr. Lee to do so, and he has clearly not met it.

## The String-Cite of Assertions of Privilege

The remainder of the questions relied upon by Dr. Lee in arguing that Mr. Risen should be held in contempt of court are subject to even less analysis by Dr. Lee. They are simply a string of citations following Dr. Lee's unsupported assertion that Mr. Risen "refused to answer any and all questions directed at whether he had communications with any of the defendants or their agents during his reporting on Dr. Lee." Application at 17. For starters, that description is a mischaracterization of Mr. Risen's answers. Second, Dr. Lee offers no analysis to support his state-

-12-

ment.  Dr. Lee does not even offer generic descriptions of these questions, which, even if offered,

would not suffice to establish violation of the Court's Order.

These questions do not violate the Court's Order for a number of reasons.  As noted

above, some have nothing at all to do with the identity of any officer or agent of defendants who

provided information to the Reporters about Dr. Lee and thus, do not implicate the Court's Order.

*See, e.g.,* 77:4-10; 91:22-92:1; 102:2-6; 129:2-7; 160:9-16; 161:6-21; 162:2-7; 163:15-18.   Still

other questions seek information that does not implicate the Privacy Act as they do not address in-

formation about or identifying Dr. Lee.[7]  *See, e.g.,* 38:25-39:12; 44:20-23; 77:4-10; 78:15-18;

86:12-88:12; 91:22-92:1; 118:25-120:14; 129:2-7; 129:20-24; 137:8-12; 142:8-12; 147:25-148:8;

159:3-10; 160:9-16; 161:6-21; 162:2-7; 163:15-18.  Moreover, yet another one of these questions

was changed subsequently in Mr. Risen's errata sheet.  *See* 77:7-10.  It is clear that these questions

suffer from the same infirmities as those addressed above.  Moreover, even if the Court were to find

that some of these questions may implicate its October 9th Order, Dr. Lee still has not sufficiently

demonstrated *how* such questions implicate the Order with the requisite degree of proof necessary

to hold Mr. Risen in contempt.

Under the law of this Circuit, Dr. Lee is required to establish a *prima facie* case sup-

porting a contempt motion.  It is inconceivable that Dr. Lee can move to hold Mr. Risen in contempt

of court without even a modicum of analysis as to a legitimate basis for such a finding.  As this

---

[7]     Some of these instances fit into both categories because they neither violate the Court's Order nor im-
plicate the Privacy Act.

-13-

Court has held, "[t]he evidence supporting a finding of contempt must be clear and convincing." *Landmark Legal Foundation* v. *EPA*, 272 F. Supp. 2d 70, 75 (D.D.C. 2003). "The petitioner in a civil contempt case has a heavy burden of proof, often described as proof by 'clear and convincing evidence,' that the respondent violated the court's prior order." *Washington-Baltimore Newspaper Guild* v. *Washington Post Co.*, 626 F.2d 1029, 1031 (D.C. Cir. 1980) (citation omitted). Dr. Lee's Application does not even attempt to make such a showing. His unsubstantiated assertion that Mr. Risen violated the Order, followed by a string citation with references to questions that have nothing to do with Dr. Lee or his underlying case, is hardly sufficient for a contempt finding.

As this Court noted in its February 4, 2004 hearing, Dr. Lee's motion to show cause for finding the Reporters in contempt "would have to set forth the factual predicate for the finding, [a]nd that the answers given, when put, failed to comply with the order that I entered some time ago." Hearing, at 6. The Court explained that it would then "have to make a finding that, indeed, the question called for an answer, and that the answer was not forthcoming." *Id.* It would be improper for this Court to hold Mr. Risen in contempt for not answering questions that were (a) subsequently answered, (b) not covered by the Court's Order, or (c) irrelevant to the underlying lawsuit for which the depositions were taken. As demonstrated above, the questions on which Dr. Lee relies for his motion for contempt fit into these three categories and are, in any event, not even discussed by Dr. Lee. Indeed, Dr. Lee does not even attempt to explain how the refusal to answer these questions violates the Court's Order. For this reason, Dr. Lee has not met his burden, and his motion should be denied.

-14-

## CONCLUSION

Mr. Risen should not be held in civil contempt.[8]

Dated: July 30, 2004
Respectfully submitted,

CAHILL GORDON & REINDEL LLP
Attorneys for Non-Party Reporter James Risen

By:   s/ Donald Mulvihill

       Donald J. Mulvihill (DC Bar No. 056242)
       Floyd Abrams
       Joel Kurtzberg
       Karen Kaiser
       1990 K Street, N.W.
       Washington, D.C.  20006-1103
       (202) 862-8900

---

[8]     By separate memorandum submitted today, Mr. Risen and the other Reporters that Dr. Lee seeks to have held in contempt have urged the Court that in the event the Court finds any of them to be in contempt, any fine (a) be made payable to the Court and not to Dr. Lee, (b) be nominal in amount, and (c) be stayed pending appeal.